# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 148, AFL-CIO, <br><br> Plaintiff, <br><br> v. <br><br> GATEWAY HOTEL HOLDING, INC. d/b/a MILLENIUM HOTEL, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. 4:12-CV-1549-JAR |

## MEMORANDUM AND ORDER

This matter is before the Court on cross motions for summary judgment. On December 19, 2012, Plaintiff International Union of Operating Engineers Local 148, AFL-CIO (the "Union") filed a Motion for Summary Judgment (ECF No. 12) and on January 22, 2013 Defendant's Motion for Summary Judgment (ECF No. 21). These motions are fully briefed and ready for disposition.

## BACKGROUND

Defendant Gateway Hotel Holdings, Inc. d/b/a Millennium Hotel in St. Louis ("Millennium") currently recognizes the Union as the bargaining representative for its engineering and maintenance employees. (Statement of Uncontroverted Material Facts in Support of Defendant's Motion for Summary Judgment ("DSUMF"), ¶1). Effective April 10, 2011, the Union and Millennium entered into the current CBA, effective for the time period of April 10, 2011 through March 31, 2016. (DSUMF, ¶3). Article I of the CBA, the Recognition clause states:

> Section 1. The Company recognizes the Union as a sole and exclusive bargaining agent for engineering and maintenance employees, excluding all office and clerical employees, professional and supervisory employees. The union represents that its jurisdiction, as granted by the AFL-CIO, is set forth in the Article XIII (CRAFT JURISDICTION) of the Constitution of the International Union of Operating Engineering (a copy of which has been furnished to the Company) and that the employees covered hereby shall operate, maintain and keep in good running order all machinery, equipment and other items for which they are responsible as assigned.
>
> Section 2. It is agreed and understood that the above recognition acknowledges and satisfied the representation rights of the Union as the sole and exclusive bargaining agent for the above-defined employees as and to the extent specifically provided by the National Labor Relations Act, as amended. It is further agreed and understood that the Union has no organizational interest in and will not engage in any organizational activity among employees of the Company other than those it represents who now perform engineering and maintenance services and functions.

(DSUMF, ¶4).

Article VIII of the CBA provides the grievance and arbitration procedures agreed to by the Union and Millennium. Article VIII defines a grievance as a "dispute with or claim or complaint against the Company involving the interpretation or application of the express provisions of this Agreement and taken up in the grievance procedure." The first step of this grievance procedure states that "[g]rievances shall be presented by the complaining employee to his supervisor." (DSUMF, ¶5).

Article XIV of the CBA addresses the sick leave policy that applies to the bargaining unit employees represented by the Union. Article XIV allows bargaining unit employees to accrue sick days, up to a maximum of ninety (90) days, and states that Millennium "shall payout employees in the bargaining unit for hours of accrued unused sick time in excess of ninety (90) days by July 1, 2012 at the applicable rate of pay." (DSUMF, ¶6).

James McHugh ("McHugh") was employed by Millennium and the predecessor owners of the hotel, beginning in 1974. (DSUMF, ¶8). At least until 1999, McHugh was a member of

the bargaining unit represented by the Union, holding various positions in the Engineering Department. (DSUMF, ¶9). McHugh was promoted to Chief Engineer on February 1, 1999. (DSUMF, ¶10). The Union claims that McHugh continued to be a member of the bargaining unit and Local 148 after 1999, and he was a member of the bargaining unit for the duration of his employment. (ECF No. 27, ¶10). Millennium, however, contends that, following his promotion to Chief Engineer, McHugh became a member of the hotel's senior management team and was no longer a member of the bargaining unit. (DSUMF, ¶11).

Following his promotion to Chief Engineer, Millennium continued to make contributions to the Union's Health and Welfare Trust and Central Pension Fund on behalf of McHugh and deducted Union dues from McHugh's paycheck. (DSUMF, ¶14). Millennium claims that it made these contributions at McHugh's request and that making such contributions is common practice for former bargaining unit members who move into management positions. (Id.).

Millennium contends that, as Chief Engineer, McHugh was responsible for making hiring decisions, approving wage increases, approving vacation and sick pay benefits, disciplining employees, conducting employee performance reviews, and assigning all work in the Engineering Department to the bargaining unit employees. (DSUMF, ¶16). The Union concedes that McHugh signed off on some job approval forms, some wage increase forms, some forms approving vacation and sick leave, some discipline forms, and performed some performance reviews. (ECF No. 27, ¶16). The Union also admits that McHugh signed off on various forms as the department head, but the Union denies that McHugh independently made hiring decisions for the Engineering Department. (ECF No. 27, ¶17). The Union agrees that McHugh signed off on various forms, such as paid sick and vacation time, as the department head. (ECF No. 27,

3

¶18). Finally, the Union concedes that McHugh gave performance reviews to bargaining unit employees in the Engineering Department. (ECF No. 27, ¶20).

In 2011, McHugh participated in negotiations for the current CBA. (DSUMF, ¶21; ECF No. 27, ¶21). Millennium asserts that McHugh participated in the contract negotiations without its permission, and McHugh was later reprimanded for such participation and was told that he could no longer participate in contract negotiations on behalf of the Union. (DSUMF, ¶21).

In May 2011, McHugh's then direct supervisor, Millennium General Manager Dominic Smart, gave McHugh a below-target performance review rating. (DSUMF, ¶22). As a result of this rating, McHugh was placed on a performance improvement plan. (Id.). In November 2011, Smart and Director of Rooms, Joe Vilmain, informed McHugh that he had not made sufficient improvements in his job performance and he was given ninety days (90) days to make improvements. (DSUMF, ¶23). On January 23, 2012, McHugh was discharged from his position at Millennium. (DSUMF, ¶24).

Upon McHugh's discharge, Millennium paid him his accrued, unused vacation time. (DSUMF, ¶25; ECF No. 27, ¶25). Millennium claims that it paid this amount pursuant to its vacation policy in its employee handbook, which applies to all employees. (DSUMF, ¶25). The Union claims that McHugh was paid his unused vacation pursuant to Article VII of the CBA. (ECF No. 27, ¶25).

Following McHugh's discharge, the Union filed an unfair labor practice charge against Millennium with the National Labor Relations Board ("NLRB"). (DSUMF, ¶26). On March 14, 2012, the NLRB's Regional Director declined to issue an unfair labor practice complaint against Millennium, concluding that McHugh was a supervisor as defined by the NLRA and, therefore was not entitled to the NLRA's protections. (DSUMF, ¶27). The Union then appealed the

Regional Director's decision to the General Counsel for the NLRB, who affirmed the decision. (DSUMF, ¶28).

On August 28, 2012, the Union filed its Complaint alleging unfair labor practices pursuant to §301 of the LMRA, 29 U.S.C. §185 and under 28 U.S.C. §1337. (ECF No. 1). Under Article VIII of the Agreement, arbitration is the final step in the resolution of "a dispute with or claim or complaint against the Company involving the interpretation or application of the express provision of this Agreement." (Compl., ¶8). The CBA provides in Article XIV that "[t]he employer shall payout employees in the bargaining unit for any hours of accrued unused sick time in excess of ninety (90) days by July 1, 2012 at the applicable rate of pay." (Compl., ¶9). The Union claims that Millennium did not properly payout McHugh's accrued sick pay according to the CBA. The Union requests that the Court issue an Order compelling arbitration of McHugh's grievance regarding his sick pay. (Compl., ¶1, p. 3).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986); Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. Id. Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex Corp., 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 258.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Celotex Corp., 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Torgerson, 643 F.3d at 1042 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)).

**DISCUSSION**

**I.     DEFENDANT'S MOTION FOR SUMMARY JUDGMENT[1]**

Millennium contends that McHugh was a supervisor after he was promoted to Chief Engineer in 1999. Consequently, Millennium asserts that McHugh was not entitled to take advantage of the grievance procedures in the CBA, which Millennium claims does not apply to supervisors.

   A. McHugh Was a Supervisor Under the NLRA

Article I, Section 2 of the CBA (the Recognition clause) limits the scope of the bargaining unit covered by the agreement by stating that the Union is the sole and exclusive

---

[1] The Court addresses Defendant's Motion for Summary Judgment first because it is dispositive of the issues at hand.

bargaining agent for the "above defined employees to the extent specifically provided by the [NLRA]." (DSUMF, ¶4 (citing Article I, Section 2 of the CBA)).[2] In turn, Section 2(3) of the NLRA excludes supervisors from the definition of employees entitled to the Act's protection. 29 U.S.C. §152(3)("[t]he term 'employee' … shall not include … any individual employed as a supervisor"). Section 2(11) defines supervisors as those individuals who have authority, in the interest of the employee, to:

> [H]ire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

29 U.S.C. §152(11). The NLRA further provides that employers may not be compelled to consider individuals defined as supervisors as employees for the purpose of any law relating to collective bargaining and, therefore, entitled to the Act's protections. 29 U.S.C. §164(a).

In response, the Union contends that the NLRA's definition of "supervisors" is not incorporated into the CBA and/or that the parties were free to define the term "supervisor" in a way that differs from the NLRA. (ECF No. 26, pp. 5-6). The Union contends that if the "parties had intended the word 'supervisor' in the Recognition clause to have the same meaning as it is defined under the NLRA, then the reference to the NLRA would have come immediately after the language in Section 1 of [the] Recognition clause referencing supervisors and establishing the scope of the bargaining unit." (ECF No. 26, p. 6). The Union further maintains that, if the parties had intended to use the NLRA definition of "supervisor", then they should have explicitly stated so. (ECF No. 26, pp. 6-7). The Union also asserts that "the phrase 'as and to the extent specifically provided by the National Labor Relations Act' was not intended to refer to the

---

[2] The Recognition clause provides that "[i]t is agreed and understood that the above recognition acknowledges and satisfied the representation rights of the Union as the sole and exclusive bargaining agent for the above-defined employees as and to the extent specifically provided by the [NRLA], as amended."

7

classification of employees covered by the agreement, but rather to reference the scope of the Union's representations rights as the sole and exclusive bargaining agent 'for the above-defined employees' in Section 1 of the recognition clause." (ECF No. 26, p. 7). The Union contends that the "phrase 'to the extent specifically provided by the National Labor Relations Act' as used in Section 2 of the Recognition clause of the parties' contract simply means that the subjects over which Millennium Hotel is required to bargain are parallel with those set forth in the NLRA." (ECF No. 26, p. 7). The Union also maintains that the Recognition clause incorporates Article XIII of the Union's constitution, which the Union contends encompasses persons engaged in the supervision of various duties. (Id.).

The Court finds that the CBA incorporates the definition of "supervisor" from the NLRA. The Court determines that the Union's proposed interpretation does not give adequate importance to the phrase, "above defined employees to the extent specifically provided by the [NLRA]." (DSUMF, ¶4 (citing Article I, Section 2 of the CBA). The Court believes that this phrase can only be interpreted to incorporate the definition of "supervisor" from the NLRA into the CBA. Thus, the Court must determine whether McHugh was a "supervisor" as defined in the NLRA.

As Chief Engineer at Millennium, the Union admits that McHugh engaged in many of the enumerated activities in the NLRA's definition of "supervisor." The Union acknowledges that McHugh signed off on some job approval forms, some wage increase forms, some forms approving vacation and sick leave, some discipline forms, and performed some performance reviews. (ECF No. 27, ¶16). The Union also concedes that McHugh signed off on various forms as the department head, but the Union denies that McHugh independently made hiring decisions for the Engineering Department. (ECF No. 27, ¶17). The Union agrees that McHugh signed off

8

on various forms, such as paid sick and vacation time, as the department head. (ECF No. 27, ¶18). Finally, the Union acknowledges that McHugh gave performance reviews to bargaining unit employees in the Engineering Department. (ECF No. 27, ¶20). If McHugh performed any one of these tasks, then he is considered a supervisor under the NLRA. See Multimedia KSDK, Inc. v. N.L.R.B., 303 F.3d 896, 899 (8th Cir. 2002)("an employee possessing the authority to exercise any one of the enumerated functions satisfies" the requirements to be considered a supervisor).

Based upon the Union's concessions, the Court finds that McHugh was a supervisor under the NLRA. Although the Union purports to deny that McHugh exercised any independent judgment in making these decisions, the Union provides no support for this self-serving contention. Rather, the Court finds that the nature of these acts, particularly reviewing employees requires independent judgment and supports a finding that he was a supervisor. It appears undisputed that McHugh performed these tasks in the interest of his employer, Millennium.[3]

The Court does not find that a material dispute of facts exists as to whether McHugh was a supervisor. Rather, the Union simply seems to dispute whether a supervisor can be covered by the CBA; the Union contends that a "supervisor" is covered by the CBA. The Court, therefore, addresses whether a supervisor could bring a grievance under the CBA.[4]

---

[3] Although McHugh self-servingly disclaims that he performs these acts in the interest of his employer, Millennium, the Court does not find this to be a true issue of material fact. First, McHugh does not identify who, if other than his employer, he performed these activities in the interest of. Second, these tasks all seem to be of a nature that they can only be done in the interest of the employer. For example, the Court finds that McHugh only would have performed tasks relating to the hiring and firing employees in the interest of his employer, Millennium.

[4] In its opposition to Defendant's Motion for Summary Judgment, the Union also contends that Millennium cannot refuse to process McHugh's grievance because it was brought by the Union and not by McHugh himself, and that the Union is allowed to bring grievances under the CBA. (ECF No. 26, pp. 3-5). Millennium, however, points out that it does not contend that McHugh's grievance cannot be processed because it was brought by the Union and not McHugh himself. (Defendant's Reply in Support of Its Motion for Summary Judgment ("Reply"), ECF No. 30, p.

B. Supervisors Not Covered Under the CBA

With respect to the CBA, the Court finds that the CBA explicitly excludes "supervisors" from its coverage. Article I, Section 1 provides that "the Union [is the] sole and exclusive bargaining agent for engineering and maintenance employees, excluding all office and clerical employees, professional and supervisory employees." Likewise, Article I, Section 2 recognizes the Union as the sole and exclusive bargaining agent for the "above defined employees." Thus, under the plain terms of the CBA, the Union is the sole and exclusive bargaining agent for employees, but not supervisors.

In keeping with this interpretation, Article VIII, the grievance procedure, states that it only applies to employees, as defined in Article I. (DSUMF, ¶5). The first step of a grievance procedure requires the complaining employee to present the grievance to his or her supervisor. (Id.). Reading Article VIII and Article I together, step one of the grievance procedure calls for engineering and maintenance employees, excluding supervisors (among others), to commence the grievance procedure by filing the grievance with his or her supervisor—which would be McHugh. Based upon this interpretation, supervisor employees, such as McHugh, cannot take advantage of the grievance and arbitration procedure in Article VIII of the CBA. See United Steelworkers of Am., Local No. 1617 v. Gen. Fireproofing Co., 464 F.2d 726, 729 (6th Cir. 1972)(the Union could not utilize the arbitration provision because "disputes concerning supervisory personnel [were] not included" in the employees who could take advantage of the grievance procedures). Thus, the Union cannot invoke the grievance procedure on behalf of McHugh, who clearly was not intended to benefit from this provision under the CBA.

---

2). Rather, Millennium argues that the arbitration provision of the CBA does not apply to McHugh because he is not an employee as defined by the CBA. (Id.).

Rather than argue that McHugh is not a supervisor under the CBA and the NLRA, the Union relies on a strained interpretation of the CBA that would allow supervisors to be covered under the CBA. The Union maintains that the Recognition clause[5] incorporates Article XIII of the Union's constitution, which provides for craft jurisdiction. (ECF No. 26, p. 7). Article XIII provides:

> Section 1. Jurisdiction of the International Union of Operating Engineers shall include but not be limited to persons engaged in the following crafts:
> (a) Stationary Engineers' Craft Jurisdiction:
> All persons engaged in supervising, controlling, or assisting in operating, maintaining, or assisting in maintaining … all … devices (irrespective of pressure or heat source and including hot water and/or other hot liquid or gas systems); pressure vessels, … motor pumps, air compressors … refrigeration and/or air conditioning machines, units, plants and systems …, fans and ventilating systems, … heating systems and all components thereof … and any and all instrumentation and controls (including remote instrumentation and controls) used on or in the above equipment, devices or systems, including all equipment, controls and instrumentation used in the handling, preparing and delivery of fuel (irrespective of type) from and/or to storage bins, yards, tanks or reservoirs up to and into equipment using, consuming or converting the fuel (irrespective of the motive power); … the supervision, operation and maintenance of all of the above when connected with and/or used in power and plant operation in all governmental, commercial and industrial activity including but not limited to … hotels.

(ECF No. 14, ¶5).

The Union asserts that the supervision of "equipment, processes and functions" necessarily includes "something other than monitoring equipment, processes or functions; it was intended to refer to its common meaning of supervising workers." (ECF No. 26, pp. 7-8).[6] The Union contends that interpreting the term "supervise" in any way other than the Union's

---

[5] As previously stated Article I, Section 1 of the CBA (the Recognition clause) provides that "The Company recognizes the Union as a sole and exclusive bargaining agent for engineering and maintenance employees, excluding all office and clerical employees, professional and supervisory employees. The union represents that its jurisdiction, as granted by the AFL-CIO, is set forth in the Article XIII (CRAFT JURISDICTION) of the Constitution of the International Union of Operating Engineering (a copy of which has been furnished to the Company) and that the employees covered hereby shall operate, maintain and keep in good running order all machinery, equipment and other items for which they are responsible as assigned.."

[6] Conversely, Millennium interprets the "supervision" in this section as referring to supervision of "equipment, processes and functions," not employees.

interpretation would create a conflict with the Recognition clause. (ECF No. 26, p. 8). To avoid such a result, the Union states that the CBA must be interpreted and resolved through the expertise of an arbitrator. (Id.). Therefore, McHugh claims that supervisors are covered under the CBA.

The Court concludes that a plain reading of the CBA, particularly Article I, does not permit the possible inference that McHugh was a member of the bargaining unit. The Court finds that Millennium's interpretation of the grievance and arbitration provision is consistent with the Recognition clause of the CBA. Article I of the CBA excludes supervisory employees from coverage under the CBA. (DSUMF, ¶4). The Court also does not read Article XIII as referring to supervisory employees. Article XIII refers to supervising "equipment, processes and functions," not employees. The Union's strained interpretation of the term "supervise" and its purported "common meaning of supervising workers" are not reflected in Article XIII, which clearly refers to craft jurisdiction. Accordingly, the Court finds no basis for finding that supervisors are to be included in coverage under the CBA when they are explicitly excluded under Article I of the CBA.

### C. Millennium Cannot be Compelled to Arbitrate

The Union contends that the issue of whether or not McHugh's grievance is subject to arbitration is a matter for the arbitrator to decide. Conversely, Millennium asserts that it cannot be compelled to arbitrate the instant dispute because it never agreed to arbitrate disputes involving supervisors, such as McHugh.

"Arbitration is strictly 'a matter of consent[.]'" Granite Rock Co. v. Int'l Bhd. of Teamsters, 130 S. Ct. 2847, 2857, 177 L. Ed. 2d 567 (2010) (quoting Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 479, 109 S.Ct. 1248,

103 L.Ed.2d 488 (1989)). Thus, arbitration "'is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration[.]'" Granite Rock Co., 130 S. Ct. at 2857(quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995). Supreme Court "precedents hold that courts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement *nor* (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue." Granite Rock Co., 130 S. Ct. at 2857-58; International Brotherhood of Electrical Workers v. GKN Aerospace North America, Inc., 431 F.3d 624, 627 (8th Cir. 2006)("Arbitration is a matter of contract, and no party may be required to submit a dispute to arbitration if it has not agreed to do so."). Where a party contests either or both matters, "the court" must resolve the disagreement. Granite Rock Co., 130 S. Ct. at 2857-58; GKN Aerospace North America, Inc., 431 F.3d at 627 ("The determinative question is whether the collective bargaining agreement at issue here is 'susceptible of an interpretation that covers' the grievance at issue."). Thus, the presumption that a dispute is arbitrable does not apply where the arbitration agreement unambiguously does not cover the dispute at hand, which is the case here. As discussed herein, the Court finds that the CBA is not susceptible of an interpretation that covers the Union's grievance regarding McHugh's pay and, thus, this claim is not arbitrable.

The Union argues that the grievance and arbitration provisions of the CBA apply to McHugh. However, those provisions apply to employees, and not supervisors. Article I of the CBA states that the Union is the sole and exclusive bargaining agent for the "above defined employees." (DSUMF, ¶4). That section defines employees as "engineering and maintenance employees, excluding all office and clerical employees, professional, and supervisory employees." (Id.). Given that this Court has found that McHugh was a supervisory employee,

the Court finds that, under Article I, Millennium and the Union agreed that the Union would be the sole and exclusive bargaining agent for only the employees covered under the CBA, which did not include McHugh.

Moreover, the Court finds that the grievance and arbitration procedures provided for in Article VIII apply only to grievances filed by employees, as defined in Article I. (DSUMF, ¶5). The Court has found that McHugh was a supervisor and not an employee as defined in Article I. Thus, the Court holds that the grievance procedures in Article VIII do not apply to McHugh.

In conclusion, the Court finds that the plain terms of the CBA establish that Millennium did not agree to arbitrate disputes involving supervisors, and no plausible reading of the CBA could lead an arbitrator to a contrary conclusion. Therefore, the Court determines that the dispute is not arbitrable, nor is the question of whether the dispute is subject to arbitration.

### D. McHugh's Membership in the Union Does Not Impact His Claim

In support of its Motion for Summary Judgment and in opposition to Millennium's Motion, the Union claims that Millennium continued to treat him as if he were a member of the collective bargaining unit. In particular, the Union emphasizes that Millennium continued to deduct union dues from his paycheck, even after McHugh was promoted to Chief Engineer. As further support of his claim, the Union even claims that such deductions are illegal. See ECF No. 26, p. 8 (stating that the Taft-Hartley Act, 29 U.S.C. §186, makes it a crime for an employer to remit money to a labor organization). The Union contends that, under the Declaration of Trust, Millennium could only have submitted contributions to the Central Pension Fund for employees that Millennium was required to make contributions for and who were represented by the Union. (ECF No. 26, p. 9).[7]

---

[7] The Restated Agreement and Declaration of Trust of the Central Pension Fund of the Union limits the term "Employee" to "[a]ny employee represented by the Union and working for an Employer as defined herein, and with

Millennium, however, maintains that McHugh requested that Millennium continue to deduct union dues from his paycheck following his promotion to Chief Engineer. (DSUMF, ¶14). Millennium claims that it did so at McHugh's request. (Id.).

Millennium also asserts that McHugh has conflated the issues of union membership with whether a person is a member of the collective bargaining unit. The NLRA does not preclude supervisors from being union members. "Supervisors have no statutorily protected right to participate in union affairs …, and it is clear that where they do so it is at the employer's sufferance, subject to the limitations of the Act." Mon River Towing, Inc. v. N.L.R.B., 421 F.2d 1, 6 (3d Cir. 1969). Although not represented by the union for collective-bargaining purposes, supervisory employees may elect to retain their union membership because they "receive[] substantial benefits as a result of their union membership, including pension, disability, and death benefits[.]" Florida Power & Light Co. v. Int'l Bhd. of Elec. Workers, Local 641, 417 U.S. 790, 795 (1974). Thus, Millennium emphasizes that the determination regarding whether McHugh retained his union membership and whether he was represented by the Union for collective bargaining purposes are two separate and distinct inquiries.

Thus, the Court agrees that whether Millennium permitted McHugh to remain a member of the Union is irrelevant to the determination regarding whether he was a supervisor and/or whether he was a member of the collective bargaining unit. (ECF No. 18, p. 8). The fact that McHugh may have retained his membership in the Union does not preclude the Court from entering summary judgment in Millennium's favor.

### E. Treatment of McHugh as a Member of the Bargaining Unit

---

respect to whose employment an Employer is required to make contributions into the Trust Fund." (ECF No. 26, p. 9). Moreover, the Declaration of Trust defines the term "Employer" to mean "[a]n employer who is a member of, or is represented in collective bargaining by, an association and who is bound by a collective bargaining agreement with the Union providing for the making of payments to the Trust Fund with respect to employees represented by the Union." (Id.).

Similarly, the Union points to other evidence indicating that McHugh was a member of the bargaining unit. When McHugh first began exercising his duties as head of the engineering department in 1995, Millennium's predecessor, the Regal Riverfront Hotel, stated in a letter to McHugh, dated November 17, 1995, that he would remain in the Union and would "continue to be covered under all provisions of the current contract." (ECF No. 26, p. 10). Further, at a contract negotiation meeting on June 8, 2011, Millennium presented a plan that limited the amount of sick time accrual for members of the bargaining unit under the contract. (Id.). In conjunction with the proposal, Millennium presented a chart, dated June 8, 2011, that listed the accrued sick time for bargaining unit employees who would be affected by the new provision. (Id.). McHugh was listed on the chart along with all the other bargaining unit employees, and the chart reflected that McHugh had $100,350.13 in accrued benefits. (Id.). The chart also reflected that McHugh had 37.04 years of accruing sick pay, which reflected his total length of employment with Millennium as of June 8, 2011. (Id.). In addition, Millennium's Controller told McHugh on two occasions in August/September 2011 that his sizable accrued sick time benefits were part of the reason that Millennium sought to prospectively limit the amount of benefits that could be accrued. (ECF No. 26, pp. 10-11).

In response, Millennium argues that, despite any evidence to the contrary, the CBA unequivocally excludes McHugh from the bargaining unit. (ECF No. 30, p. 11). Millennium contends that the Union cannot ask the Court to rewrite the CBA based upon some anecdotal evidence to the contrary. (Id.). Millennium notes that McHugh's job title of Chief Engineer is absent from both Article I and Exhibit A of the CBA. (Id.). In addition, Millennium points out the "zipper clause" in Article XVI, which states that the CBA "represents the complete collective bargaining and full agreement by the parties in respect to pay, wages, hours of employment or

16

other conditions of employment." (Id.). Millennium claims that this zipper clause precludes consideration of agreements and statements made outside of the CBA. See GKN Aerospace North America, Inc., 431 F.3d at 630 (plaintiff's interpretation of the agreement which would include the employee as covered under the CBA even though he was a supervisor was not tenable because it would require the court to ignore the "zipper clause" which stated that the CBA "constitute[d] the total agreement between the two parties"); see also Pace v. Honolulu Disposal Service, Inc., 227 F.3d 1150, 1159 (9th Cir. 2000)("Notable in this case is the inclusion of a 'zipper clause' in each CBA - so called because the combination of the integration and no-oral-modification clauses is intended to foreclose claims of any representations outside the written contract aside from those made in another written document executed by the parties.")

The Court agrees that the agreements and statements made outside the CBA cannot be used to alter the terms of the CBA. Although Millennium at times acted in a manner that was inconsistent with McHugh's supervisory position, the Court is bound by the terms of the CBA, which excludes the arbitrability of McHugh's complaint under the express provision in Article I. Remarks by Millennium employees cannot override the terms of the CBA and make McHugh's otherwise unarbitrable claim arbitrable. The Court finds the unequivocal language of the CBA controlling over the evidence presented by the Union grants Millennium's Motion for Summary Judgment and denies the Union's Motion for Summary Judgment on that basis.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment [12] is **DENIED**, and Defendant's Motion for Summary Judgment [21] is **GRANTED**.

Dated this 8th day of July, 2013.

                                                 _/s/ John A. Ross_
                                                 **JOHN A. ROSS**
                                                 **UNITED STATES DISTRICT JUDGE**